The next case is In Re. Mosdos 22-33, 22-36. Just a moment, counsel. All right. And we have 10 minutes per side for argument. Counsel, you've reserved two minutes for rebuttals. Is that correct? Thank you. You may proceed. May it please the Court, my name is Alicia Kobry, and I represent Mosdos Chofetz Chaim and Rebbe Meir Zaks. The Bankruptcy Court here, without jurisdiction, made a series of errors resulting in the dismissal of State court claims that arose and were brought post-confirmation and did so without ever actually considering those claims. As to jurisdiction, the post-confirmation State law causes of action, including for fraud and breach of fiduciary duty, had no close nexus to the plan and plainly exists outside of and independent of Mosdos' bankruptcy. Mr. Kobry, can I ask you, if you could go back to the March 16, 2020, conference where Judge Drain is asking a number of times if these two issues will unlock the case and resolve the matter, what would you say? I would say no. And I believe that counsel did say no and objected at the time, despite Appellant's argument. And I can cite the court to the record that at 3667 to 68 and 70, perhaps a little bit inartfully, but nonetheless did address that and did object. Inartfully and not clearly, maybe, in addition to inartfulness. Yes, Judge. But, you know, I think, and I have it here, you know, Judge Drain did put the question quite clearly to counsel and said, if, in fact, the board that was the board when the plan was confirmed authorized those actions, would they still be fraudulent and, if so, why? That's the question I think Your Honor is referring to. And the response was, given what the court's de- What page of the appendix are we reading from? I'm sorry, Your Honor. Page 4A, 3667. And I believe it goes into 68, as well. You know, and the response was, you know, given what I'm quoting, given what the Court now sees in the amended complaint, which is that based on the plan, Rabbi Arier, acting on behalf of Mostos, had a donor give the debt that was supposed to be given back to Mostos to him individually in an entity that Rabbi Arier's son controlled, I'm just paraphrasing there, Rabbi Arier's son owned and controlled. Given the fact that Rabbi Arier, that Arier individually then transferred the sole assets of the property. And then the judge says you're not answering my question. And that's because, you know why? That's because he wasn't answering the judge's question. But, Your Honor, I think, you know, read in the context of what was, of the back and forth that was going on, it was a clear objection. I mean, it wasn't a clear. It was not clear. But it was an objection to the idea that this could be reduced down to those two things. It was a reference back to the fraud. And was that ever, was that ever, that objection ever reiterated in the course of what turns out to be a rather lengthy process leading up to a trial? And the submission of pretrial orders and all of that? Was there ever a further objection beyond what you just quoted to us? That was the objection. And then later on, and I'm sorry, later on in the, in that same transcript at 3670, there was an attempt by Mr. Chworsky to raise the issue again. And the judge basically decided that he was going to move on at that point. But those are the records I take from here. But doesn't he have to make a record? Doesn't he have to state his objection fully and then have it be rejected? You just sort of give up and at that point, if you haven't made the record, well, the judge isn't going to rule my way anyway, so I don't have to say anything. Your Honor, and yes, and that's a fair point. But, Your Honor, on the same page of the record, counsel for most of those objected again in response to the question by the bankruptcy court about whether this unlocks the whole rest of the case. He says, Your Honor, in my pretty lengthy memo of law, I lay out very clearly why this Court is not the proper forum. Exactly. Exactly. He reiterates the objection to jurisdiction. But he does not. That, I thought, was one of the clearest examples of the failure to raise an objection to how the Court was planning to proceed or what the Court thought were the key issues before it. The response is, but those issues are not properly before you, period. And it is not an answer to the question of, if I have jurisdiction, will these two issues, the ones that I need to resolve? Again, I think the clearest objection that I can point to is the one that I referenced earlier at 36, at 67, which is, in response to the Court's direct question, a response that directly related to the much broader fraud that had nothing to do with the two narrow questions. I mean, that response in which the fraud, you know, the counsel talked about, you know, had the donor giving the debt, that's obviously a fraud that goes well beyond and outside of the two narrow questions that the bankruptcy court had identified. And so, yes, it could have been more. But the bankruptcy court is trying to get some control over this sprawling matter. Yes. Yes, Your Honor. And judges do that, trial judges do that by trying to say, look, if we answer this or we resolve this, then we do that. And that's part of how you structure litigation and control your docket and get things done. And that's what Judge Strain was asking repeatedly. And he didn't get an answer other than what you pointed to. And then either later on at A3684, starting at line 13, he says, and we spent an hour and I have no answer to my question, which is if we answer those two issues, does everything else fall in line? I believe the answer is they do all fall in line. And counsel says, I'm not questioning whether the Court has authority to retain jurisdiction. It's simply the form of an apology. So, I mean, I'm not – I think the judge thinks he's gotten everybody on board with how he's structured the issues going forward. Your Honor, and I do want to come back to the jurisdiction issue for a minute. But I think, Your Honor, the objection that we point out, and I agree that it's certainly – maybe it's an understatement that it could have been more clear. Nonetheless, it was – it did talk about the broader fraud. And really, there was no – How would you have answered it? I would have answered it. If you give a clear no, a clear objection, and then you say, Judge Drain, here's why that won't resolve all of these claims, which is what? Which is – which is that the – I mean, this was a breach of fiduciary duty and fraud claim. The question about whether the Board had approved it, you know, doesn't begin to touch those claims. I mean, and that's why I think it's difficult to understand even how the judge could have thought that he could shoehorn an eight-count State court complaint into two narrow questions. Well, maybe he was a little misled by the fact that your side came to him in the first place, saying this is basically a contempt – what we're complaining about really is a contempt of your order. That's true, Your Honor. But he sent that back, and he clearly sent it back. No, he didn't send it back. I mean, that's just a fault. I'm sorry. He didn't – The judge sends it to mediation, basically. The judge says, I want you guys to work this out, your brothers, why can't you deal with this? There's never – and the judge at various points questions, as a judge would in oral argument, well, do I really have jurisdiction? But there's never an order that says go back to State court, is there? Well, there's not an order, but he says, and I'm quoting from the record at 1872, I don't think I have jurisdiction over it at all. And he says later on, he says, it seems to me, based at least on what I know about the transactions, that most of them do not pertain to whether there was a breach of the confirmation order. And he says the plan is over. I mean, there's nothing to do anymore. All the other distributions were made that say 1864. But is there a final ruling to that effect, or does the discussion then go on thereafter? There's no final ruling. But, Your Honor, I think it's very – I mean, it seems to me that the question of sort of flip-flopping here, which I grant you I just sort of accused your side of doing, is really kind of irrelevant, right? I mean, what's relevant is did he get it right at the end, not did he at one time think he didn't have jurisdiction. But what did he think at the end, and if so, was it right or wrong? Well, that's exactly right, Your Honor. And I know that my time has expired. Right. But if I can just address the jurisdictional point for a moment. I mean, the test here as articulated in this Court's Euro-American case and DPH case is the close nexus test. That requires that an integral connection to the bankruptcy plan, that was not – that was not – the bankruptcy court did not apply that test here at all, nor did the district  court. The district court actually said that jurisdiction had been waived, which is difficult to understand. Right. I mean, but as I understand your position, isn't what you're asking for is for the property to be returned to Mosdos free of all obligations? Yes. And isn't that directly contrary to the plan, which aimed to protect the mortgage holder? No, I don't think it's contrary to it at all. The plan provided that a mortgage payment should be made, and only in the event that those mortgage payments could be made, then post-confirmation, outside of the scope of bankruptcy, then the Court said, and really it wasn't even necessary, that the sale would be authorized. That's the – But you're making the argument that the mortgage holder is just out of luck because he got a tax deduction. But if your position is right, he doesn't get a tax deduction at all because he didn't donate anything to a charity. He donated something to Rabbi Aryeh's private pocket. No, but you're – he got the tax deduction. He donated it to a different nonprofit. And that's exactly the core of the fraud, which was that he was misled into thinking that he was donating – and this is what we allege in the State Court complaint – he was misled into thinking that he was donating that to Mosdos Chavetz Chaim, which had been the – Well, maybe he's misled, but at the end of the day, how does he get a tax deduction for a donation to a fraud? Because he don't – He got cheated. He got robbed. But he didn't get – he doesn't have a legitimate tax deduction. And I'm sorry, Your Honor, he did get a tax deduction. It's our understanding because he donated it to another nonprofit called – created by Rabbi Aryeh called Chavetz Chaim. He did get a deduction. Isn't that a question of law? He may have claimed the deduction. But once all is said and done, why aren't you asking that that whole thing be reopened? Why does Mosdos get the property back where – what the – free of the mortgage when the mortgage holder really didn't get anything that he wanted out of this? But, Your Honor, he did. And I think the agreement was that he was simply going to donate the property back in order to get a tax deduction. He received – he made a claim for, it's our understanding, the tax deduction. But I guess the question of remedy is something separate. Well, but isn't all of that – doesn't all of – however this should come out, isn't this all something about what was the plan supposed to provide would happen? And if what was done was contrary to that, if what was done was not that the mortgage holder was protected but that the mortgage holder was cheated, that seems to me to go directly to was the bankruptcy court's order violated? But, Your Honor, the frog was on Mosdos here. Mosdos lost its property because Rabbi Aryeh created another nonprofit entity, misled the donor into donating it to that other property. And this all happened – And none of that was what the bankruptcy court contemplated in the confirmation order. But there was no sale of the property at all included in the confirmation order. And that's what we argue at length. If you look at all of this court's cases where there's post-confirmation jurisdiction relating to a transaction like this, it's always where there's the sale order, the sale of the property, the transaction was reviewed or approved or enshrined in another – in an order of the bankruptcy court. That's Petri. That's Motors Liquidators. That's Millennium Sea Carriers. That's the U.S. Supreme Court. So are you saying that they had to come back to the – to the judge and get an order before they could sell it? Not at all. This was all – It was all contemplated by the confirmation order. was in an event that the mortgage payments could not be made, then the property could be sold, which of course could happen – would have happened anyhow post-confirmation. That wasn't necessary. The bankruptcy court can't retain indefinite jurisdiction by saying if at some later point some eventualities occur, then this property could be sold. Of course the property would have to be sold at that point. And that's exactly the distinction between this case and all the other cases where this court has had – has upheld post-confirmation jurisdiction. The cases that were cited by Judge Strain, those were all cases where there was an order by the bankruptcy court that was being violated post-confirmation. That didn't happen over here. I mean, the confirmation order does contemplate continuing management by the brothers and continuity of the board. I mean, I think on the theory that, you know, at least with that, the interests of the corporation will be able to proceed under that structure, which, I mean, I can see why then, in light of the allegations in the State law complaint, that Judge Strain thought that these questions mattered for resolution. Well, it's hard to even understand – and I'm sorry, I know I'm way over time – but it's hard to even understand how he could have thought that. But for – take, for example, the breach of fiduciary duty claim. The fact that a board – I mean, this – I mean, derivative actions are brought every day in courts all across this country where the allegation is that the board had – even though the board had authorized it, that the board had breached its duties to the corporation. That's a basic – that's a basic idea behind – Was the board sued here? This is a derivative claim. Most of those bringing the action as a – against the entity and against its directors, sure. Okay. And – or the fraud claim, for that matter. Just the fact that you have a closely held corporation, you know, I mean, it's hard to understand how Judge Strain could have actually believed that causes of action for breach of fiduciary duty for fraud and for conversion would be unlocked by the fact that you have a closely held board between the Rabbi Arieh and his son had approved the transaction. And for that reason, you know – and, you know, for that reason, you know, we – you know, the objection – That would have been – it would have been very easy to object and say exactly what you just said. Your Honor, I mean, it's not obvious. It shouldn't seem obvious to the lawyer for your side in the bankruptcy court. I agree, Your Honor. I agree that it – that it should have been objected to more – more clearly. But that objection was – And then one of the reasons we have objection rules is because you don't want a gaming where you go along, a whole lot of litigation happens in the wake of that decision, and you see whether you prevail or not, and then you get to – you get a do-over. Well, but to be fair, Your Honor, I think Judge Strain's – Judge Strain was not in a happy disposition at that time, and counsel, you know, I think was – was trying to dance – to dance around a little bit. But I think, Your Honor, on the jurisdictional point, I think it's very clear. Judge Strain never applied the close nexus test that's required by this Court. And if you look at – I mean, there was nothing about this sale that was enshrined or required or approved by this bankruptcy court. And if you – if you find jurisdiction here, I think you'd be extending this Court's jurisdiction. Because this was a sale that happened – was not a – the judge here never had any of the facts or circumstances, never approved it. And – The benefit of the order of the mortgage, right? And so that is quintessential bankruptcy, isn't it? Post-confirmation, I think, Judge, you know, the – I think this Court, you know, has And, you know, when – when and if, you know, the – as contemplated by the plan and the confirmation order, payments could not be made under the mortgage, at that point, the corporation would have to do what it would do to resolve an – a secure claim that was outstanding post-confirmation. And there was another provision, actually, in the plan, which actually authorizes the post-confirmation debtor to sell the property and to – or to – I can – I can find the provision, but this wasn't a requirement to the plan. This – this did not – did not add anything to include that provision in the plan. Of course, if there was a claim outstanding post-confirmation and the claim could not be satisfied through the mortgage payments, payments would then have to be made subsequent to that. Thank you, Counsel. Thank you, Judge. All right. We'll hear from Mr. Levine. Thank you, Your Honor. Thank you for letting us wear the mask for Halloween. Your Honor, this is Michael Levine. I'm appearing on behalf of the appellees. I want to deal primarily in my time with the subject matter jurisdiction issue, and then I'll answer any questions regarding other one – other areas that the Court may have. Appellants concede that a bankruptcy court maintains court jurisdiction to interpret and enforce any of its prior orders, and that such interpretation or enforcement itself is a court procedure. They further concede that the bankruptcy court had jurisdiction to and properly issued its confirmation order in the underlying bankruptcy case. They claim, however, that neither the confirmation order nor the allegations in the complaint in the subject adversary proceeding itself conferred subject matters jurisdiction because the adversary proceeding was reportedly not a core matter. We strenuously disagree for several reasons. First, appellants contend that the confirmation order merely granted permission, quote, to most of those to sell the property at some future date, and after the subsequent sale was outside of the jurisdiction of the bankruptcy court. They argue that the debtor had the right to sell the property after the fact anyway and that it was a superfluous, I think in their words, provision that allowed them to sell the property. But a review of the confirmation order establishes, I think very clearly, to the contrary. It did not just grant permission to sell the property in the future in the normal course. It provided specific parameters for the sale, the circumstances under which a sale could take place, the type of entity that could purchase the property, and the minimum purchase price for the purchase for the same. It also provided for rights granted to the purchaser, which it would not have had in the simple elective sale after confirmation. And I'll give the Court some examples. At page 9 of the confirmation order, it says, quote, Upon the closing date of such sale, the property shall vest in the successful purchaser, at which time any and all liens, claims, and encumbrances that have not been expressly preserved under the plan and transferred to the sale proceeds shall be deemed extinguished as of such date, end quote. In a regular sale, a purchaser would not have purchased free and clear of any liens and encumbrances. It would have purchased subject to any liens and encumbrances. So clearly, this order provided rights to the subsequent purchaser that it would not have had. At page 10, I'm quoting again, The debtor, the organized debtor, a religious corporation, is hereby authorized to sell the property pursuant to and under the plan to any qualified religious corporation or not-for-profit corporation. The plan itself thus required a particular type of purchasing. If this was an ordinary, after-the-fact, post-confirmation sale, anybody could have bought the property, not the specific entity that Judge Green in the confirmation order directed it be sold to. That provision goes on to state that the sale must be, quote, In full and final satisfaction, release, and discharge of the allowed TGB rodency court claim, which is currently $24,755,000, end quote. And that, quote, The holder of the TBG rodency court claim shall receive payment on account of the allowed TGB rodency court claim sufficient to pay the TBG rodency court claim in full. So if there is that provision, there would be no requirement at a regular sale that the proceeds go to pay a particular amount or that the sale has to be a particular amount to pay the proceeds. Okay. So am I right to conclude that if Mr. Kobry's view of this transaction or set of transaction was correct, that is to say, if the property was not transferred to a legitimate not-for-profit corporation as part of a scam to satisfy the mortgage holder by giving him a basically fraudulent receipt for a donation, that that would have violated the bankruptcy court's confirmation order in the plan? Of course. Is that what you're saying? Sure. But that's what confers jurisdiction on the bankruptcy court. Right. But then I guess the next question, and this is a question on the merits, as it were, is that if that were true, if that's what happened and that's what would have violated the confirmation order, how could that be cured by a vote of the board if the board was duped by or either duped by or was intentionally in cahoots with Aryeh to do this scam Why would the board's vote solve that? Right. The allegation here is that the board was, in fact, duped. That's the allegation by the plaintiff, by the appellant. Okay. The response to that is, no, the board wasn't duped. This was fully disclosed to the board. And, in fact, during a – that argument before Judge Drain, Judge Drain said, I never said it couldn't be sold to an insider. There's no point in the plaintiff says that. So the issue became, was the board, in fact, duped, or did the board, in fact, with full disclosure of this transaction, approve it? And that's why the issue of who constituted the board was dispositive of this action. And in any event, regardless of the merits of that question, whether the vote of the That all was waived because the judge said, this is what I'm going to do. Tell me what's wrong with that. And nobody did so. That's one of your arguments as well. That's correct, Your Honor. We wouldn't need to reach the question of whether the judge was correct or would be affirmed had there been a proper objection to his proposal. But independently you're arguing that that objection was never properly raised. Correct. And just in response to my learned counsel's statement, had it been raised, had somebody said, this is why these two issues will not resolve it, that objection would have been overruled because these two issues do, in fact, account for and resolve every claim in the amended complaint that was removed to this Federal court. So I do... Judge, why in that same proceeding is discovery authorized to figure out where the money went? What does that have to do with the two issues? Right. That was our objection, by the way, that the judge ordered that. We didn't think it was germane. But the Court's feeling was as follows. Assume that you're right, you meaning appellants, are right, and this transaction has to be set aside. If that's the case, then I need to know what happened with any money that came from the proceeds because maybe they have to reallocate the money. So I think what Judge Drain was doing was kind of a protective order, which I think was very sound, saying, let's know where the money went, and then later on we'll decide whether to transfer the monies wherever it went, which, by the way, was to pay all debts, was proper or not. So I think that that was his thinking in initially talking about, I want an accounting of the money and a monthly accounting of what you're taking in. Because he didn't know at that point how he was going to resolve the two dispositive issues. It wasn't until after the trial, very lengthy trial, very lengthy discovery, that he decided that both of those issues, well, it was one of them in favor of the appellees and one of them was waived subsequently by the appellants in their trial brief. I do have other – my time is up. I do have other arguments, but if the Court feels that that's sufficient, I'll conclude at this point. Thank you, counsel. Thank you, Your Honor. Mr. Cooper. Thank you, Judge. Just two points in response. First, there is – there is – the State – the State law claims are not remotely disposed of by whether the question about whether the Board was duped. So just – I just want to take 35 seconds to just articulate what the allegations of the State court complaint are. They are that Rabbi Aryeh went to a donor to whom it was agreed would donate the note back to Mostos, the entity, and that instead of allowing that note – and that was an agreement between Rabbi Aryeh and Rabbi Mayer, and that was understood, that the note would be donated back, that that donor would get a tax deduction, and then the Mostos, the entity, would own the property free and clear. That was the agreement. Instead, Rabbi Aryeh created another entity with a similar name for the purpose of defrauding that donor. And the name – and so instead of Mostos Chafetz Chaim created an entity called Chafetz Chaim and then had a parent company, Shem Olam. All control – those – Chafetz Chaim, the fake entity, the entity created to conduct the fraud, and Shem Olam were created for the purpose of conducting the fraud and were controlled entirely by Rabbi Aryeh. They were not – but – and then told the donor, you're donating the note, the donor believed he was donating it to Mostos Chafetz Chaim as agreed, instead went to Chafetz Chaim, and thereby Rabbi Aryeh was able to wrest control now in possession of the – of a note on the property, to wrest control over the – over the piece of property itself. And that – that fraud, which was – which has its – its kind of genesis in the lie to the donor and then was continued throughout by being able – through Rabbi Aryeh being able to essentially suck money out of the entity by – through a mortgage that he obtained on the property. All of that – that is a fraud on the entity itself. It's – it is – it's not remotely – it can't be authorized. It's a fraud on Rabbi Meier because he is thereby divested from control. Correct. Which the bankruptcy court – it was a violation of the plan and the confirmation order because those specifically contemplated continued joint operation of Mostos. True? No, because – I would disagree, Your Honor, because once the – once the plan was confirmed, what happened to the property, the bankruptcy court – But what happened to the control of Mostos was supposed to be that the two brothers would continue in joint operation. And what you're saying is really what happened – it's not – it's not so much what happened to the money. It's what happened to control, which is the same stuff is going on, the residents, the school, the worship community. It's just that now Rabbi Meier is no longer part of running the show. Your Honor, once the – once the confirmation occurred, the sale of the property happened outside of the scope of that. And that fraud – so the fraud happened outside of the scope of it. And to say that the bankruptcy court could retain jurisdiction over that post-confirmation would conflict with this Court's cases. I mean, every case that this Court has decided where you have a post-confirmation transaction like this, which is – you know, which – in which the bankruptcy court retains jurisdiction is one in which there is an actual sale order. Wasn't all this known to your side when you moved for an emergency motion for the Not all of it, Your Honor. Why did you do that? On what basis were you going to move for contempt? So it's my – so the record, I think, reflects that at that point, because there was a previous State court complaint that had been filed that related to the assignment of the note. So I think – I think that aspect of it was known, that the note had been – had by that point been assigned to an entity controlled by Rabbi Arieh, but it was only late I thought there was some – some allegation prior to the – going back to the bankruptcy court for contempt that Arieh had gone rogue and was stealing assets from the debtor. I believe that that's the issue, that by that point, it was already – the – Rabbi Mayer had already learned that the note had been improperly assigned to this other entity created by Rabbi Arieh. That's the heart of your question. Which is the genesis of it. But I think it was – That's the heart of your fraud claim, and yet you went back to the bankruptcy court to get contempt. So you're flipping on – on the jurisdiction of the bankruptcy court. I agree that that – that that is – that that's a – you can view it that way. However, I – you know, Judge Drain clearly said that he does not have jurisdiction to – to adjudicate those claims at that point. He didn't issue an order. I mean, I – I concede he did not issue an order saying, you know, I – I'm divested of jurisdiction. But – but properly understood with the repeated statements that we cite in our brief are all to the effect of this is not properly before me now. And – and I will – But then – then he looked at it differently. He did. And he thought, oh, actually, if I think about these two issues, that – that I do have jurisdiction over that, and that resolves everything, and nobody dissuaded him otherwise. Your Honor, again, I – I mean, I – I understand – I understand what Your Honor is saying. I mean, I think the objection that was made, the one that I cited to the 36, 67, and 68, you know, was – again, it was inartful, but it was – it was – it was – it clearly brought up the heart of the fraud that we had. And that – that was our objection. Thank you, counsel. Thank you, Your Honor. Thank you to both sides for your excellent arguments and briefing.